UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEJANDRO GARCIA, ET AL | CIVIL ACTION |
| VERSUS | NO. 01-3424 |
| SMITHKLINE BEECHAM CORPORATION, ET AL | SECTION "T"(4) |

    Before the Court is a Motion for Summary Judgment (Document 35) filed on behalf of the Defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"). The parties waived oral argument and the matter was taken under submission on July 25, 2007. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

**I.    BACKGROUND**

    The Plaintiff, Alejandro Garcia, contends that he suffered permanent injuries as a result of his alleged use of over-the-counter medications known as Dimetapp, manufactured by Wyeth, and Contac®, manufactured by GSK. Mr. Garcia claims that both products contained the ingredient PPA, which he alleges caused him to suffer a hemorrhagic stroke on March 29, 2000.

He claims that the defendants knew or should have known that the PPA contained in their products would allegedly cause stroke and failed to warn him regarding the alleged hazards of the products. He also asserts that the Contact® and Dimetapp products were unreasonably dangerous in design.

## II.     LAW AND ANALYSIS

### A. Law on Rule 56 Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *cert. denied*, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588.  Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Court's Analysis

A June 18, 2003 Order of Judge Barbra Rothstein, the judge presiding over MDL No. 1407, stated that summary judgment is warranted when a plaintiff cannot prove he ingested the product at issue within 72 hours of his stroke.  The defendants in the case at hand contend that the plaintiff has put forth no proof that he ingested any PPA-containing medicine manufactured by GSK within 72 hours of his alleged injury and, as such, this Court should grant summary judgment, dismissing with prejudice his claims against GSK.

Both the plaintiff and his wife, Marcia Garcia, have been deposed.  Mr. Garcia testified that he couldn't recall whether he ingested Contac® and admitted that he did not know what medication, if any, he took on the morning of his stroke.  The plaintiffs note that due to the stroke Mr. Garcia suffered in March 2000, he suffers from extreme memory loss and cannot remember something as simple as his address, much less which medications he took four years prior to his deposition.  Due to the fact that Mr. Garcia cannot remember when, or even if, he took Contac®, both parties rely heavily on the deposition testimony of his wife.

The plaintiffs cite Mrs. Garcia's depositions for the propositions that: (1) Mrs. Garcia bought Contac® and Dimetapp "three or four days" before Mr. Garcia's stroke; and (2) Mrs.

Garcia saw Mr. Garcia take Contac® the day she purchased these two medicines. At the beginning of her deposition Mrs. Garcia does state that she purchased Contac® within three or four days before Mr. Garcia's stroke of March 2000 and testified that Mr. Garcia consumed same:

> Q: When was it in relationship to March 30th of 2000 that you recall your husband first complaining about this condition of a cold, the third one that you remember?
>
> A: He had it like three or four days before his stroke.
>
> Q: And what did he do in response to having this condition?
>
> A: Laid in the lounge chair, took medication, over-the-counter medication.

Deposition of Marcia Garcia, Page 101, Lines 2-11.

The defense again asks the same question:

> Q: How long did your husband suffer these symptoms prior to you going to purchase the medication that you did on that day when you bought both the Contac® and Dimetapp?
>
> A: It was three or four days.

*Id*. at Page 111, Lines 18-22.

However, as the defendants note, later in Mrs. Garcia's deposition, she expressly disavowed the testimony and the "three or four day" time frame plaintiffs cited. When asked about the discrepancy between her "three or four day" testimony and the information she included in the Plaintiff's Fact Sheet ("PFS"), that stated she bought Contac® and Dimetapp three to four weeks before the stroke, Mrs. Garcia acknowledged that her recollection that she bought the medicines three to four days before the stroke was incorrect:

> Q: And it [the PFS] says: When did you obtain the PPA-containing medication which you claim caused your injuries: You understand that to mean your husband's injuries, correct?
>
> A: Yes.
>
> Q: It's indicated in there two to three weeks before the stroke, the stroke being March 30th of 2000.
>
> A: Right.
>
> Q: So two to three weeks prior to that is when you purchased the product?
>
> A: Purchased it, right.

*Id.* at Page 162, Line 25; Page 163, Lines 1-12.

> Q: Now the time frame that it [a letter produced by Mrs. Garcia] that says the medication was taken was- and forgive me, if I can stand up so we can both look at it?
>
> A: Week before.
>
> Q: It says were taken week before stroke, and then given the date March 30, 2000. The time frame that's there is different from the time frame we went over this morning?
>
> A: Right.
>
> Q: And different from the time frame that's contained within the fact sheet stating two to three weeks before?
>
> A: Right. Well, that's when it was purchased.
>
> Q: And you told me that your husband first took it on that day?
>
> A: Right.
>
> Q: So your husband was consuming the Dimetapp that you told me about today, which you told me to be the correct one, beginning two to three weeks prior to his stroke?

>    A:   Correct.
>
>    Q:   Okay.  So this information here being only take a week before the stroke is not correct?
>
>    A:   It's not accurate.
>
>    Q:   It's not accurate in that it limits it only to one week?
>
>    A:   Right.
>
>    **Q:   But what you told me about today which his accurate is that it was at least two weeks to three weeks before?**
>
>    **A:   Right**.

*Id*. at Page 179, Lines 18-25; Page 180, Lines 1-25; Page 181, Lines 1-2.  (Emphasis added.)

Mrs. Garcia goes on to testify that she believed she saw her husband ingest the medication 3-4 days after she purchased it.  *Id*. at Page 230, Lines 2-6.  She did not see him take it at any other time after that first instance.  *Id*. at Lines 16-18.  She only saw him take it that one time.  *Id*. at Lines 19-21.  She did not know whether Mr. Garcia had taken it without her seeing it after that first time.  *Id*. at Page 230, Line 25-Page 231, Line 1.

Thus, when the entirety of Mrs. Garcia's deposition testimony is considered, she ultimately acknowledged that she purchased Dimetapp and Contac® two to three weeks prior to her husband's stroke.  The only time she ever saw her husband take a Contac® was the day she bought it.  As such, Mrs. Garcia's testimony places Mr. Garcia's alleged ingestion of the Contac® outside the 72 hour window.

In addition, plaintiffs cite the testimony of Kristine S. Whatley, the EMT who arrived at the scene of Mr. Garcia's stroke.  She wrote in her ambulance report that Mr. Garcia was on

"sinus meds," however, her note does not indicate the specific sinus medication Mr. Garcia reportedly took.  Ms. Whatley's note in her report does not state when any medication was taken and, therefore, does not establish plaintiff's burden of proving that Mr. Garcia ingested Contac® within 72 hours of his stroke.

For the foregoing reasons, the Court finds that the plaintiffs have not proved that Mr. Garcia ingested Contac® within 72 hours of his stroke, as is required to withstand a Motion for Summary Judgment.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, filed on behalf of the Defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, be and the same is hereby **GRANTED.**

IT IS FURTHER ORDERED that all claims against the Defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of December, 2007.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**